UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                             Chapter 7
Jeffrey L. Butler,                                                Case No. 17-22141-svk
        Debtor.

Susan M. Dorsch,

        Plaintiff,

v.                                                                Adv. No. 17-02169

Jeffrey L. Butler,

        Defendant.

## DECISION AND ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

On June 9, 2017, Susan M. Dorsch filed a Complaint to determine the dischargeability of a debt allegedly owed by the Debtor, Jeffrey L. Butler. Mr. Butler answered and filed a Counterclaim seeking a declaratory judgment that Mr. Butler is not liable to Ms. Dorsch and that her claims are discharged. On September 13, 2017, Mr. Butler filed a Motion for Judgment on the Pleadings, and the Court set a briefing schedule. The parties have filed their briefs and the Court now issues this Decision and Order.

    I. <u>Standard for Determining Motion for Judgment on the Pleadings</u>

Bankruptcy Rule 7012(b) makes Federal Rule of Civil Procedure 12(c) applicable in adversary proceedings. Rule 12(c) states that a party may move for judgment on the pleadings after the pleadings are closed. In determining a Rule 12(c) motion, the Court takes as true all well-pleaded allegations contained in the non-moving party's pleadings. *Gillman v. Burlington*

*N. R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989) (citing *Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F.2d 174, 177 n.2 (7th Cir. 1986)). The court of appeals has noted that

> Rule 12(b)(6) and Rule 12(c) "employ the same standard: the complaint must state a claim that is plausible on its face." *Vinson v. Vermilion Cty., Ill.*, 776 F.3d 924, 928 (7th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

*St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016). The Court must view the facts in the pleadings and all inferences drawn therefrom in the light most favorable to the non-movant. *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997); *National Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987) (citing *Republic Steel*, 785 F.2d at 177 n.2).

In this case, it is necessary to define the "pleadings" because the Complaint contains an attached exhibit that includes many factual allegations. The court of appeals provided guidance for considering exhibits in *Northern Indiana Gun & Outdoor Shows v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998):

> The pleadings include the complaint, the answer, and any written instruments attached as exhibits. Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes."); *see, e.g., Warzon,* 60 F.3d at 1237 [*Warzon v. Drew*, 60 F.3d 1234 (7th Cir. 1995)] (stating that exhibits attached to the complaint are incorporated into the pleading for purposes of Rule 12(c) motions); *cf. Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988) (stating that exhibits attached to the complaint are incorporated into the pleading for purposes of Rule 12(b) motions). Under Rule 10(c), the attached documents are incorporated into the pleadings. Historically, this Court has interpreted the term "written instrument" as used in Rule 10(c) to include documents such as affidavits, *Schnell v. City of Chicago*, 407 F.2d 1084, 1085 (7th Cir. 1969), *overruled on other grounds by City of Kenosha v. Bruno*, 412 U.S. 507, 37 L. Ed. 2d 109, 93 S. Ct. 2222 (1973), and letters, *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992), as well as contracts, *Craigs*, 12 F.3d at 688-89 [*Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686 (7th Cir. 1993)], and loan documentation, *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir. 1991).

The exhibit in this case arguably does not qualify as an "instrument" under the foregoing examples. Exhibit A to the Complaint is a document purportedly signed by Ms. Dorsch's attorneys called a "Statement of Claims" related to an arbitration proceeding pending before the Financial Industry Regulatory Authority ("FINRA"). According to the Complaint, Mr. Butler served as Ms. Dorsch's broker from December 26, 2013 through September 30, 2015. The pleadings show that in July 2015, it was discovered that Mr. Butler failed to obtain Ms. Dorsch's signature on a wealth management agreement, and she refused to sign one at that time. She contacted the Wisconsin Department of Financial Institutions and then instituted a FINRA arbitration action against Mr. Butler and others. The FINRA Statement of Claims is a 16-page document containing numerous allegations that clearly do not state a claim for a nondischargeable debt. Some of the allegations and causes of action do not even pertain to Mr. Butler but rather to institutional broker-dealers and investment advisors. For example, paragraph 61 states: "Respondents (sic) acts and omissions injured Susan Dorsch. Indeed, but for the acts and omissions of the Institutional Respondents, Susan Dorsch would not have been sold unsuitable investments."

In her Response to the Motion for Judgment on the Pleadings, Ms. Dorsch points to paragraphs 7 through 14 of the Statement of Claims as alleging the particulars of Mr. Butler's "misrepresentations and omissions." Although it is debatable whether the Statement of Claims is properly considered, Mr. Butler has addressed the document in his Memoranda, and for purposes of deciding this Motion, the Court will assume that these allegations have been appropriately incorporated into the Complaint.

II. Whether the Complaint states a claim under 11 U.S.C. § 523

The Complaint imprecisely describes the Bankruptcy Code sections Ms. Dorsch seeks to apply. For example, paragraph 1 states that the adversary proceeding is "pursuant to 11 U.S.C. § 523(a)(4) and (a)(19)." But the only specified "Cause of Action" is "Non-dischargeability of Debt Pursuant to 11 U.S.C. §§ (sic) 523(a)(2)." And the Demand for Judgment asks the Court to enter a judgment "Declaring that the debt owed to Plaintiff is not dischargeable pursuant to 11 U.S.C. § 523(a)(2) and (4)." In her Response to the instant Motion, Ms. Dorsch clarifies that she asserts that her dischargeability claims arise under § 523(a)(2) (false pretenses, false representation or actual fraud); § 523(a)(4) (fraud or defalcation in a fiduciary capacity, embezzlement or larceny) and § 523(a)(19) (violation of securities law resulting in a judgment, settlement agreement or order). The Court will address whether the well-pleaded allegations of the Complaint state a claim under these sections.

A. 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) provides: "A discharge under section 727 . . . does not discharge an individual debtor from any debt - . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by - . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To prevail on a complaint to determine dischargeability under this provision, a plaintiff must establish three elements. First, the plaintiff must show that the debtor obtained money, property, services, or an extension, renewal or refinancing of credit from it by making representations which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation. *In re Scarlata*, 979 F.2d 521, 525 (7th Cir. 1992); *see also Mayer v. Spanel Int'l*, 51 F.3d 670, 673-74 (7th Cir. 1995). The plaintiff must also show that the

4

debtor acted with an intent to deceive. *Scarlata*, 979 F.2d at 525. Finally, the plaintiff must show that it justifiably relied on the debtor's false statements. *Field v. Mans*, 516 U.S. 59, 74-75 (1995). A plaintiff may also prevail under § 523(a)(2)(A) by establishing actual fraud, which need not involve a misrepresentation. *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581 (2016). "[A]nything that counts as 'fraud' and is done with wrongful intent is 'actual fraud,'" and though "'fraud' connotes deception or trickery generally," it is difficult to define. *Id.* at 1586; *see also McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (fraud includes "all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth" and "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated" (citation omitted)).

Ms. Dorsch alleges in the Statement of Claims that she first met Mr. Butler in the summer of 2013 and informed him that she was losing her job, near retirement age and she needed to live off of consistent and stable income from her retirement account. She met with him again in the fall of 2013 and received the necessary paperwork to transfer her accounts to Mr. Butler and TD Ameritrade. In January 2014, Ms. Dorsch received checks from closing her previous retirement accounts. Mr. Butler personally picked up the checks but did not discuss how the monies would be invested.

In April 2014, Ms. Dorsch contacted Mr. Butler when she noticed that he had not invested her funds. He told her that he was "developing a 'new investment strategy' for 40 of his customers, which included trading the VXX (Barclays Bank iPath S&P Short-Term Futures ETN) and the purchase of Seadrill (Seadrill Ltd; ORD) which he said would be a 'long-term' investment." (Docket No. 1-1 at ¶ 11.) The Statement of Claims alleges that starting in September 2014, Mr. Butler frequently purchased and sold shares of the VXX and other

5

Case 17-02169-svk    Doc 28    Filed 11/06/17    Page 5 of 14

securities that Ms. Dorsch characterizes as "aggressive, high risk stocks." (*Id.* at ¶ 14.) In July 2015, Ms. Dorsch approached persons she worked with about her growing concerns with her account. She then contacted Mr. Butler to request a copy of her wealth management agreement, and it was discovered that Mr. Butler inadvertently had failed to secure her signature on the agreement. Notably, he had obtained her husband's signature on a wealth management agreement which included a risk tolerance questionnaire, and Mr. and Ms. Dorsch were both present at the meeting where that signature was obtained. (Docket No. 6 at ¶ 25.)

Ms. Dorsch rejected Mr. Butler's request to sign a copy of the wealth management agreement when the mistake was discovered. (*Id.* at ¶ 27.) Instead she filed a complaint with the Wisconsin Department of Financial Institutions ("DFI"), and the gravamen of the DFI's response to the complaint is the failure of Mr. Butler to have a written contract with Ms. Dorsch. (Case No. 17-22141-svk; Docket No. 13-1 at 38-40.) Without such a contract, the only written information that Mr. Butler could rely on in choosing suitable investments was Ms. Dorsch's emails stating her anticipated loss of employment and desire to retire at age 63. (*Id.*) The DFI required Mr. Butler to refund Ms. Dorsch's advisory fees and requested that Mr. Butler consider whether any agreement could be reached with Ms. Dorsch concerning her financial losses. Mr. Butler refunded the fees but reached no agreement with Ms. Dorsch. She then filed her FINRA Statement of Claims, and the arbitration proceeding had not concluded when Mr. Butler filed his Chapter 7 bankruptcy petition.

Considering these facts, the Court concludes that Ms. Dorsch's Complaint does not state a claim for false pretenses, false representation or fraud under § 523(a)(2). The Complaint does not contain well-pleaded factual allegations that Mr. Butler made false representations, that he knew his representations were false or that he made the representations with reckless disregard

6

for their truth, or that Mr. Butler made these statements with the intent to deceive Ms. Dorsch. The only representation he is alleged to have made is that he was developing a "long-term" investment strategy for 40 of his clients. Apparently he undertook that strategy but Ms. Dorsch had "concerns" that she addressed with co-workers, leading her to request a copy of her signed wealth management agreement. Mr. Butler discovered that he did not have a signed copy of the agreement and risk questionnaire, an obvious mistake in his professional services.

To the extent that Ms. Dorsch implies that failure to obtain a signed account agreement constitutes false pretenses or actual fraud, this Court disagrees. When Mr. Butler had not invested Ms. Dorsch's account for four months, she called and asked why. She also expressed a concern she heard on the radio about market volatility. He stated he was developing a strategy for a long-term investment, and he identified the exact investments included in this strategy. This is not fraudulent. He proceeded to buy and sell securities that Ms. Dorsch considered too risky. But investing in securities is risky by nature. Mr. Butler is not a guarantor of the return an investor can expect in the stock market. The alleged fraud in this case does not compare to the fraudulent transfer schemes in *Husky* or *McClellan v. Cantrell*.

Even assuming for the sake of argument that Mr. Butler made the false representation that the investments he chose would provide a return for Ms. Dorsch, the Court cannot draw the inference from the pleadings that he made that representation with fraudulent intent. "A determination of intent to deceive focuses on circumstantial evidence and is generally inferred if the totality of the circumstances presents a picture of deceptive conduct by the debtor which indicates an intent to deceive or cheat the creditor. If there is room for an inference of honest intent, the question of nondischargeability must be resolved in the debtor's favor." *Buckeye Ret. Co. v. Kakde (In re Kakde)*, 382 B.R. 411, 427 (Bankr. S.D. Ohio 2008) (internal quotations and

7

Case 17-02169-svk    Doc 28    Filed 11/06/17    Page 7 of 14

citations omitted).  First, there is no indication Mr. Butler profited personally from investing Ms. Dorsch's money in the VXX and other "risky" stocks; any investment fees he earned he returned to her.  It simply defies logic for an investment broker to set out with the intention that an investor lose her money.  Yet this leap of faith is required to find a claim here.  Ms. Dorsch's argument asks the Court to infer from the facts that she was 59 years old and soon to be unemployed that Mr. Butler intended to deceive Ms. Dorsch.  But the circumstances suggest that he did not have this intent, but rather intended to invest her account in a manner to avoid market volatility.

And Ms. Dorsch's allegation of justifiable reliance also falls short.  Justifiable reliance requires the creditor to not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field*, 516 U.S. at 71 (quoting Restatement (Second) of Torts § 541 cmt. a (1976)).  Ms. Dorsch parted with her money long before Mr. Butler made the alleged misrepresentations about the suitability of his investment strategy.  And when he did not invest her money for a few months, she contacted him to determine why not.  He told her about a long-term strategy and the names of the VXX and Seadrill Ltd.  She could easily have researched these investments on the internet or asked Mr. Butler for more information.  Under the circumstances, the Court finds that assuming Mr. Butler misrepresented the strategy he was proposing, Ms. Dorsch has not alleged she justifiably relied on that misrepresentation.

### B. 11 U.S.C. § 523(a)(4)

Bankruptcy Code § 523(a)(4) carves out an exception to discharge for debts created by the debtor's fraud or defalcation in a fiduciary capacity.  To prevail, the creditor must prove that: (1) a trust existed, (2) the debtor was a fiduciary of the trust, and (3) the debtor committed fraud

8

or defalcation while carrying out the fiduciary responsibilities associated with the trust. *James Cape & Sons Co. v. Bowles (In re Bowles)*, 318 B.R. 129, 137 (Bankr. E.D. Wis. 2004). Although courts have differed as to whether and when the duties owed by a broker to his client give rise to the fiduciary relationship necessary to trigger nondischargeability under § 523(a)(4), several courts have found that the requisite fiduciary relationship exists if the broker has discretionary control over the client's accounts. *See Whitaker Secs., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 75 (Bankr. S.D.N.Y. 2015) (collecting cases). Drawing reasonable inferences in favor of Ms. Dorsch, the Court concludes that Mr. Butler was a fiduciary for purposes of § 523(a)(4).

The closer issue is whether Ms. Dorsch's Complaint states a claim for defalcation. The Supreme Court held that defalcation requires an intentional wrong similar to embezzlement, larceny or extreme recklessness as exemplified in the Model Penal Code. *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 272-74 (2013). Prior to *Bullock*, courts had differed regarding the level of wrongdoing required to qualify for the exception. Some circuits found that mere negligence by a fiduciary constituted defalcation. *See, e.g., In re Sherman*, 658 F.3d 1009 (9th Cir. 2011); *In re Uwimana*, 274 F.3d 806, 811 (4th Cir. 2001) ("[N]egligence or even an innocent mistake which results in misappropriation or failure to account is sufficient.").

Even before 2013, this Court and some others in the Seventh Circuit defined defalcation more strictly. In *Building Trades United Pension Trust Fund v. Mueller (In re Mueller)*, Ch. 7 Case No. 10-23917-svk, Adv. No. 10-2351, 2011 Bankr. LEXIS 2290, at *8-10 (Bankr. E.D. Wis. June 8, 2011), this Court provided examples.

> For example, defalcation was shown by evidence that debtors used false accounting methods to systematically loot their daughter's trust account for their own use. *In re Bingaman*, 397 B.R. 444 (Bankr. C.D. Ill. 2008). In *Bingaman*, instead of using a trust account for the comfort, support, and education of their

9

daughter, the debtors (who were fiduciaries of the trust) used the account as their personal piggy bank—paying for their vehicles, cable television, and cell phones. *Id.* The court held that the debtors were culpable for defalcation because the improper withdrawals and false accounting demonstrated a willful breach of their fiduciary duty. In contrast, where the debtor's breach is due to poor judgment, rather than self-interest, courts have not found proof of defalcation. *In re Hunt*, 439 B.R. 690 (Bankr. N.D. Ind. 2010). In *Hunt*, the debtor who was the fiduciary of a trust invested $150,000 of trust property in fraudulent Internet scams that he believed were legitimate. He hoped the investments would pay off in a considerable return for the trust; those hopes proved unfounded when the $150,000 of trust property was stolen by the scams' perpetrators. Although the debtor's decision to invest in the scams was "gullible and even quintessentially stupid," the court noted his intent was to benefit the trust rather than himself. *Id.* at 693. Accordingly, the court held that the debtor was not culpable for defalcation under § 523(a)(4) because his actions, while "undoubtedly negligent," were not willful, knowing, or reckless. *Id.*

The nature of Mr. Butler's conduct in this case is much closer to the negligence standard than the intentional or criminally reckless actions necessary to find defalcation. Like the debtor in *Hunt*, Mr. Butler invested in products that he believed were sound long-term investments. He did not convert Ms. Dorsch's retirement savings to his own use like the debtors in *Bingaman*, but invested it in publicly traded investments. Mr. Butler disclosed the names of those investments to Ms. Dorsch. Ms. Dorsch's Response to the Motion for Judgment on the Pleadings identifies paragraphs 36 through 41 of her Statement of Claims as most clearly alleging Mr. Butler's fraud in a fiduciary capacity. But those paragraphs merely parrot the legal elements of a misrepresentation claim, which is not sufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In short, Ms. Dorsch's Complaint does not set forth well-pleaded allegations that Mr. Butler committed fraud or defalcation in a fiduciary capacity.

### C. 11 U.S.C. § 523(a)(19)

Section 523(a)(19) excepts a debt from discharge if the debt:

(A) is for--

10

(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from -

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

In this case, the Complaint states well-pleaded allegations (denied by Mr. Butler) that Mr. Butler's conduct violated Wisconsin securities law, satisfying § 523(a)(19)(A)(i). The Complaint alleges that Mr. Butler violated Wis. Stat. § 551.501.[1] In the Memorandum in support of his Motion, Mr. Butler alleges that § 551.501 "does not create a free-floating, private right of action." (Docket No. 16-1 at 8.) However, he does recognize that § 551.509[2] creates civil liability for certain violations of § 551.501.

---

[1] Section 551.501 provides:
    It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to do any of the following:
    (1) To employ a device, scheme, or artifice to defraud.
    (2) To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.
    (3) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

[2] Section 551.509(2) provides:
    Liability of seller to purchaser. A person is liable to the purchaser if the person sells a security in violation of s. 551.301 or 551.501 and, as to s. 551.501(2), the purchaser did not know the untruth or omission and the seller cannot sustain the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission.

11

Case 17-02169-svk    Doc 28    Filed 11/06/17    Page 11 of 14

Mr. Butler also argues that § 551.509 does not apply here because Ms. Dorsch does not allege that he sold securities. The plain language of § 551.509(2) seems to support this conclusion: "A person is liable to the purchaser if the person sells a security . . . ." However, the Administrative Code provides that "For purposes of s. 551.509 (2) and (3) . . . any person who places an order or effects a transaction involving the purchase or sale of a security for the account of a customer pursuant to discretionary authority is deemed to be offering or selling or purchasing a security." Wis. Admin. Code § DFI-Sec 7.03(1). It is not disputed that Mr. Butler exercised discretion over Ms. Dorsch's account, and Mr. Butler's argument that § 551.509(2) does not apply to him is thus unavailing.

The Complaint alleges that Ms. Dorsch informed Mr. Butler that she was losing her job, was near retirement age, and needed to live off of consistent and stable income from her retirement account. (Complaint, ¶ 9.) He allegedly engaged in aggressive day trading and invested Ms. Dorsch's retirement account in risky, illiquid, and unsuitable securities. (Complaint, ¶ 10). Ms. Dorsch had never invested in options or futures or an index tied to either, and Mr. Butler did not disclose the risks related to investing in the VXX and other securities, including that the VXX was a note and Ms. Dorsch could lose principal by investing in it. (Complaint, ¶ 10; Statement of Claims, ¶ 12.) Ms. Dorsch alleges that Mr. Butler's management of her account resulted in losses.

Ms. Dorsch asserts that she has stated claims for "common law fraud and negligence in connection with his [Mr. Butler's] purchases and sales of securities on Ms. Dorsch's behalf" that would satisfy 11 U.S.C. § 523(a)(19)(A)(ii). (Docket No. 26 at 12.) However, the subsection does not mention negligence but rather "common law fraud, deceit, or manipulation," and the discussion of Ms. Dorsch's § 523(a)(2) and (4) claims applies equally to any common law fraud

12

claim.  *See Husky*, 136 S. Ct. at 1586 (observing the Supreme Court "has historically construed the terms in § 523(a)(2)(A) to contain the 'elements that the common law has defined them to include'" (quoting *Field*, 516 U.S. at 69)).  However, since Wis. Stat. § 551.501 does not require proof of intent to defraud, s*ee State v. Temby*, 108 Wis. 2d 521, 322 N.W.2d 522 (Ct. App. 1982), Ms. Dorsch's Complaint states a claim under § 551.509(2) regarding a violation of § 551.501.  She has therefore satisfied the requirement of a state law securities violation in 11 U.S.C. § 523(a)(19)(A)(i).

Section 523(a)(19)(B) requires the violation to result in a judgment, settlement or administrative order.  Here, the only possible administrative order for a payment owed by Mr. Butler is the Department of Financial Institution's correspondence to Mr. Butler's attorney providing in pertinent part:

> After a review of these findings, the Division is requesting that Mr. Butler and WIS refund Mrs. Stansbury-Dorsch for all advisory fees deducted from her account from its inception to September 30, 2015, with interest.  Furthermore, in light of the unsuitable recommendation and allocation of VXX, the Division requests that Mr. Butler and WIS consider whether an agreement may be reached with Mrs. Stansbury-Dorsch regarding the financial losses she has incurred.

(Case No. 17-22141-svk; Docket No. 13-1 at 40.)

Mr. Butler has refunded the advisory fees, but did not reach an agreement with Ms. Dorsch.  Accordingly, there was no unsatisfied order, judgment or settlement agreement as of the petition date.  However, § 523(a)(19)(B) makes clear that the judgment or order can be entered after the petition by any Federal or State judicial proceeding, and the better-reasoned cases include the bankruptcy court in the universe of Federal judicial proceedings that can make this determination.  *See, e.g., Holzhueter v. Groth (In re Holzhueter)*, 571 B.R. 812 (Bankr. W.D. Wis. 2017).  Accordingly, judgment on the pleadings is not appropriate on this claim.

13

IT IS THEREFORE ORDERED: Mr. Butler's Motion for Judgment on the Pleadings as to the claims under 11 U.S.C. § 523(a)(2) and (a)(4) is granted.

IT IS FURTHER ORDERED: Mr. Butler's Motion for Judgment on the Pleadings as to the claims under 11 U.S.C. § 523(a)(19) is denied.

Dated: November 6, 2017

By the Court:

*Susan Kelley*
Susan V. Kelley
Chief U.S. Bankruptcy Judge